UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARQUISE E. HAYES,

        Plaintiff,                    Civil Action No. 12-15231

v.                                HON.  BERNARD A. FRIEDMAN
                                U.S. District Judge
                                HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Marquise E. Hayes brings this action under 42 U.S.C. §405(g) challenging a final  decision of Defendant Commissioner denying his application for Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).   For the reasons set forth below, I recommend  that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded to the administrative level for further fact-finding.

## PROCEDURAL HISTORY

      On June 22, 2009, Plaintiff filed an application for SSI, alleging a disability onset date of April 13, 2009 (Tr. 116).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on October 28, 2010 in Dallas, Texas before Administrative Law Judge ("ALJ") Walter Orr (Tr. 39).  Plaintiff, represented by attorney Kelley Olsen, testified by video conference (Tr. 45-68).  On February 18, 2011, ALJ Orr found Plaintiff not disabled

-1-

(Tr. 34).  On August 30, 2012, the Appeals Council denied review (Tr. 4-9).  Plaintiff filed

for judicial review of the final decision on November 28, 2012.

## BACKGROUND FACTS

Plaintiff, born February 7, 1989, was 22 when the ALJ issued the decision (Tr. 34,

116).  He completed 12th grade and worked briefly as a cashier (Tr. 131, 134).  His

application for benefits alleges disability as a result of hyperactivity (Tr. 130).

### A.      Plaintiff's Testimony

Plaintiff offered the following testimony:

He currently stood 5' 6" and weighed 135 pounds (Tr. 45).  He tended to lose weight

when he was "stressed" (Tr. 45).  He lived in a single family home with his sister and her

daughter (Tr. 45).  He planned to attend college but was not currently enrolled (Tr. 46).  He

stopped working in June, 2008 because he was moving out of state to attend college (Tr. 46).

During that job tenure, he was assigned the job of cashier because he was working too slowly

in the position of stocker (Tr. 47).  Since that time, he had been looking for work at retail

stores (Tr. 47).  Due to plans to attend college, Plaintiff sought only part-time work (Tr. 47).

In response to questioning by his attorney, Plaintiff reported that he sought emergency

treatment in the previous year because he was "hearing voices" (Tr. 48).  He saw a

psychiatrist on a monthly basis and took Abilify and Cogentin (Tr. 48).   The psychotropic

medications created the side effect of hand tremors and jaw stiffness and made him "more

slow paced" (Tr. 49-50).  He responded better to verbal, rather than written instructions (Tr.

49-50). He experienced mood swings ranging from excitement to depression to anger within

short periods (Tr. 50-51).   He did not become violent when angered, but expressed

impatience with customers during his stint as a cashier (Tr. 51).  He experienced weekly

mood swings lasting for around two hours (Tr. 52).  He coped with mood swings by

interacting with "positive people" (Tr. 52).  He continued to hear voices "every now and then" (Tr. 52).  Although the voices told him "to do wrong things," he did not act out on the audio hallucinations (Tr. 53).

On a typical day, Plaintiff would watch television with his sister and niece for most of the day (Tr. 54).  He did not experience concentrational problems watching television (Tr. 54).  He denied sleep disturbances (Tr. 54).  He napped for approximately three hours each day (Tr. 55).  He did not perform household chores, make meals, or participate in the care of his niece (Tr. 55-56).  He did not hold a driver's license and relied on his relatives for transportation (Tr. 56-57).  He read books occasionally (Tr. 58).  He occasionally required reminders from his sister to complete tasks (Tr. 59).  He wanted to go to college but was concerned that he would be unable to keep up with the work load (Tr. 59).  He was compliant with his medication dosages (Tr. 60).  He last used marijuana over 12 months before the hearing, noting that the "voices" had directed him to smoke marijuana (Tr. 60).  His asthma prevented him from the current use of marijuana, although "witches" continued to tempt him to use the drug (Tr. 60-61).  He spent approximately three days in bed each month due to depression (Tr. 61).  On "good days," he would socialize with his friends and family (Tr. 62).  In regard to physical limitations, he predicted that he would experience difficulty lifting heavy boxes due to low energy levels (Tr. 63).  Sitting for significant periods made him "antsie" (Tr. 63).  He predicted that criticism from a supervisor would precipitate a mood swing (Tr. 63-64).  He would not experience problems interacting with coworkers (Tr. 64).  He continued to experience paranoia in unfamiliar situations (Tr. 64-65).  He was "not sure" if working around coworkers or the public would trigger paranoia (Tr. 65).

In response to questioning by the ALJ, Plaintiff reported that he applied for SSI with the encouragement of his family just after being discharged from a nine-day psychiatric

hospitalization (Tr. 66). Hospital staff had not suggested that he apply for disability benefits (Tr. 67). He stated that he had not applied for work since being discharged because he did not feel capable of working (Tr. 68).

   **B.   Medical Evidence[1]**

### 1. Treating Sources

   Plaintiff sought emergency treatment in May, 2009 after allegedly hearing voices (Tr. 175). He reported suicidal ideation (Tr. 177). At that time, he was admitted for 10-day psychiatric inpatient treatment after exhibiting delusional behavior and threatening to kill his mother (Tr. 179). He was described as "impulsive and unpredictable" (Tr. 179). Treating staff diagnosed him with a psychotic disorder ("most likely schizophrenia") assigning him a GAF of 18 to 20[2] (Tr. 179).

   Inpatient notes by a social worker state that Plaintiff claimed that he operated several nightclubs and composed music for a well-known recording artist (Tr. 181-182). He presented as "grandiose" and "somewhat delusional" (Tr. 182). Psychiatrist Abdallah E. Zamaria, M.D. noted that Plaintiff claimed he had an altercation with his mother over his need for independence (Tr. 184). Dr. Zamaria observed that Plaintiff was cooperative (Tr. 184). Venkata R. Jasty, M.D. noted that Plaintiff was less "grandiose" and "agitated" after taking Lithium and Risperdal (Tr. 185). Discharge notes by Dr. Jasty state that Plaintiff was no longer suicidal or homicidal, but continued to deny that he had a mental illness (Tr. 191-

---

[1]Treatment records unrelated to the basis for disability, reviewed in full, have been omitted from the present discussion.

[2]   A GAF score of 11–20 indicates "some danger of hurting self or others OR occasionally fails to maintain minimal personal hygiene OR gross impairment in communication." *American Psychiatric Association, Diagnostic and Statistical Manual Mental of Mental Disorders* ("*DSM–IV*"), 34. (4th ed.2000)

192).  Dr. Jasty assigned Plaintiff a GAF of 45-50[3] (Tr. 191).

May, 2009 psychiatric intake records by Macomb County Community Mental Health created following inpatient treatment state that Plaintiff minimized his psychological symptoms (Tr. 203).  Intake examiner Howard Gofstein found that Plaintiff was unable to live independently and was not "sufficiently engaged to be able to maintain employment" (Tr. 206).  Gofstein assigned Plaintiff a GAF of 45 (Tr. 209).

The following month, psychiatrist Xavier Burgoyne, M.D. noted that Plaintiff refused to take psychotropic medication based on the belief that "he will outgrow his condition" (Tr. 238, 285).  In July, 2009, Plaintiff exhibited organized speech but voiced "[a]spirations and self concept" possibly "out of sinc with [his] natural ability" (Tr. 286).  The same month, Gofstein opined that Plaintiff required "medication management" after noting that Plaintiff had run out of psychotropic medication prematurely (Tr. 352).  Gofstein opined that Plaintiff was not "an at-risk case" provided he continued to take prescribed medication (Tr. 352).  In August, 2009, Dr. Burgoyne noted that Plaintiff was unable to "give any detailed account" of the May, 2009 psychotic breakdown (Tr. 232).  September, 2009 clinical observations were negative for significant abnormalities in speech, affect, or thought processes (Tr. 298-303).  December, 2009 treating notes state that Plaintiff denied psychotic activity but was "not motivated" (Tr. 310).  In March, 2010, treating notes state that Plaintiff exhibited "[automatic]" jaw and lip movements (Tr. 322).  He was prescribed Ambilify (Tr. 322).

In March, 2010, Dr. Burgoyne refrained from performing an assessment of Plaintiff's mental condition, noting, in effect, that the treating records reflected Plaintiff's condition (Tr. 265-269).  Dr. Burgoyne also declined to complete a Mental Capacity Assessment, stating,

---

[3]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *DSM-IV-TR*, 34.  (4th ed.2000).

"An accurate assessment would require consultation with vocational rehabilitation on the job evaluation" (Tr. 272-273).  Treating notes from the following month state that Plaintiff experienced paranoid ideation (Tr. 359).  An accompanying evaluation states that Plaintiff's "instances of distrustfulness" were "rare" (Tr. 363).  Plaintiff was advised to "get [an] entry level job and pursue ideas of a grander scale at a later date" (Tr. 364).  In October, 2010, Plaintiff reported that he was "doing well" (Tr. 445).

### 2.  Non-Treating Sources

In September, 2009, psychologist Nick Boneff performed a consultative examination of Plaintiff on behalf of the SSA (Tr. 194-197).  Plaintiff described his behavior prior to the May, 2009 inpatient stint as intermittently slow and "hyper," noting that he was now seeing Dr. Burgoyne regularly (Tr. 194).  Dr. Boneff observed that Plaintiff was fully oriented but reported audio hallucinations (Tr. 195).  Dr. Boneff found the presence of a schizoaffective disorder, assigning a GAF of 47 with a fair prognosis (Tr. 196).  He found that Plaintiff would not capable of managing his own benefit funds (Tr. 196).  Dr. Boneff, noting the presence of some degree of cognitive deficiency, found that Plaintiff "would seem capable of engaging in simple work type activities at present, remembering and executing a two or three step procedure on a sustained basis, but was "best suited" for work "with little requirement for corroborative work or decision making . . ." (Tr. 197).

The following month, James Tripp performed a Psychiatric Review Technique of Plaintiff's treating records, finding the presence of schizophrenic and substance addiction disorders (Tr. 239, 241, 247).  Under the "'B' Criteria," Tripp found that Plaintiff experienced mild restriction in activities of daily living and social functioning and moderate deficiencies in concentration, persistence, and pace (Tr. 249).

Tripp also completed a Mental Residual Functional Capacity Assessment, finding that

Plaintiff experienced moderate limitations in carrying out detailed instructions, interacting appropriately with the public, and responding appropriately to changes in the work setting (Tr. 254). Tripp found that Plaintiff was "able to do simple, sustained, unskilled tasks with persistence," based on the Boneff's findings (Tr. 255).

### C. The ALJ's Decision

Citing Plaintiff's treating records, ALJ Orr found that Plaintiff experienced the severe impairment of schizoaffective disorder but that the impairment did not meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 28). He found that Plaintiff retained the Residual Functional Capacity ("RFC") for "a full range of work at all exertional levels, but with the nonexertional limitations that he can perform unskilled work that is not complicated or detailed" (Tr. 31).

The ALJ found that Plaintiff experienced mild restriction in daily living and social functioning but moderate restriction in concentration, persistence, or pace (Tr. 29). In finding that Plaintiff could perform a full range of work, the ALJ noted elsewhere in the opinion that the nonexertional limitations were exclusively "mild in nature" (Tr. 34). The ALJ cited treating records stating that Plaintiff's mental condition was stable and that he did not experience "suicidal ideation" (Tr. 33).

### STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.   The Need for Additional Evidence From Dr. Burgoyne

Plaintiff argues that the ALJ erred by declining to request "a medical opinion" from treating psychiatrist Xavier Burgoyne. *Plaintiff's Brief* at 8-9.  He contends that as a result, the record was inadequately developed to assess his condition.  *Id.* at 9 (citing SSR 96-8p).

This argument is not well taken.  Plaintiff cites 42 U.S.C. § 423(d)(B), which states that an ALJ "shall made every reasonable effort to obtain . . . all medical evidence, including diagnostic tests, necessary in order to properly make such determination." However, he does not claim that the transcript before the ALJ omitted any treating source or diagnostic records. "[A]n Administrative Law Judge need recontact a medical source only if the evidence received from that source is inadequate for a disability determination." *DeBoard v. Commissioner of Social Sec.*, 2006 WL 3690637, *5 (6th Cir. December 15, 2006) (citing 20 C.F.R. § 404.1512(e)). "Absent a gap in the record, the ALJ has no duty to recontact the physician." *Starkey v. Commissioner of Social Sec.*, 2008 WL 828861, *4 (W.D.Mich. March 26, 2008)(citing *Johnson v. Barnhart*, 138 Fed. Appx. 186, 189, 2005 WL 1414406, *3 (11th Cir. June 17, 2005); SSR 96–5p).

Plaintiff's argument is particularly weak, given that Dr. Burgoyne declined to complete the mental evaluation originally requested by the SSA on the basis that the treating records accurately reflected Plaintiff's condition (Tr. 265-269) and likewise declined to perform a residual assessment on the basis that Plaintiff's work-related abilities should be evaluated by a Vocational Expert (Tr. 272-273).   Dr. Burgoyne's own belief that his "opinion" would be either redundant or outside of his area of expertise defeats the argument that the record would be incomplete without additional input from the treating source.

### B.   The Non-Examining Sources

Plaintiff argues that while the ALJ gave "substantial weight" to the opinions of consultative examiner Nick Boneff and non-examining source James Tripp, the RFC did not reflect their findings. *Plaintiff's Brief* at 9-11.

I agree that by any standard, the RFC did not adequately reflect Plaintiff's full degree of psychiatric impairment as found by either Boneff or Tripp. The RFC limits Plaintiff to "unskilled work that is not complicated or detailed" (Tr. 31). In contrast, Boneff found that Plaintiff should be limited to work "with little requirement for corroborative work or decision making" (Tr. 197). Boneff, also noting problems in making simple calculations, concluded that Plaintiff would not be capable of handling his benefit funds (Tr. 195-197). However, neither the inability to handle finances nor problems working with others are reflected in the RFC.

Tripp's findings also reflect greater limitations than those found in the RFC. Tripp found that Plaintiff was moderately limited in the ability to interact with the general public, carry out detailed instructions, and respond appropriately to workplace changes (Tr. 254). Admittedly, Tripp's non-examining conclusions are somewhat undermined by his erroneous reference to Boneff as a "MS," or treating source, in determining that the consultative findings were entitled to "great weight" (Tr. 251). However, his findings are consistent with treating records showing that while Plaintiff's condition stabilized subsequent to the May, 2009 psychotic episode, he continued to experience significant symptomology. Treating notes state repeatedly that Plaintiff overestimated his abilities (Tr. 286); required oversight in managing his medication use (Tr. 352); and experienced neurological symptoms from either schizophrenia or medication side effects (Tr. 322). Notably, while Dr. Burgoyne refrained from completing an evaluation of Plaintiff's work related abilities, his recommendation that a Vocational Expert would be required to perform such an assessment

-10-

suggests that he believed that Plaintiff experienced significant vocational limitations.

Because the RFC composed by the ALJ stands at odds with his adoption of Boneff and Tripp's opinions, and does not address Plaintiff's full degree of mental limitation as found in the treating records, remand on this basis is appropriate.

### C. The Absence of Vocational Testimony

For the identical reasons, the ALJ's failure to procure Vocational Testimony constitutes error.

At Step Five, the burden of proof shifts to the Commissioner to establish that the claimant retains the residual functional capacity to perform specific jobs existing in the national economy. *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984). "In many cases, the Commissioner may carry this burden by applying the medical-vocational grid at 20 C.F.R. Pt. 404, Subpt. P, App. 2, which directs a conclusion of 'disabled' or 'not disabled' based on the claimant's age and education and on whether the claimant has transferable work skills." *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004). While "in the case of a non-exertional impairment, the grids may be used to direct a conclusion if the claimant's non-exertional impairments[4] do not significantly reduce the underlying job base . . . the ALJ must back such a finding of negligible effect with the evidence to substantiate it." *Lopez v. Barnhart* 78 Fed.Appx. 675, 679, 2003 WL 22351956, *4 (10th Cir. 2003)(internal citations omitted).

Pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 204.00 and SSR 85-15, if a nonexertional limitation substantially limits a claimant's ability to perform other work,

---

[4]

The term "exertional" refers to the ability to lift, carry, sit, stand, walk, push, and pull. 20 C.F.R. § 404.1569a(b). In contrast, "non-exertional" refers to any other physical or psychological limitation, *i.e.,* postural, manipulative, visual, environmental, social, and concentrational limitations. 20 C.F.R. § 404.1569a(c).

-11-

reliance on the grids is improper.   "[W]here a nonexertional limitation might substantially reduce a range of work an individual can perform, the use of the grids would be inappropriate and the ALJ must consult a vocational expert." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *see also Wilson, supra*, at 548.  The mere presence of non-exertional impairments does not require the use of a vocational expert.  Rather, the relevant question is whether the same impairments would "significantly erode" the job base.  SSR 85-15; *See Wilson,* at 548.

　While the ALJ provided a thorough review of the medical transcript, his conclusion that Plaintiff's nonexertional limitations would not result in more than a minimal reduction in the unskilled occupational base (Tr. 34) is unsupported by either the treating or consultative records.  First, both treating source Dr. Burgoyne and consultative examiner Boneff  found the presence of significant limitations in psychological functioning (Tr. 191, 196); *see also* fn 3.  Treating notes created almost one year after Plaintiff's May, 2009 psychotic break indicate that he experienced paranoid ideation (Tr. 359).  Consistent with these findings, non-examining source James Tripp found that Plaintiff experienced moderate deficiencies in concentration, persistence, or pace (Tr. 249) and that his work place abilities would be limited by moderate limitations in interacting appropriately with the public and responding appropriately to workplace changes (Tr. 254).

　While Dr. Burgoyne, Boneff, and Tripp concluded, in effect,  that Plaintiff was capable of a range of unskilled work (Tr. 197, 255, 364), none of their findings can be interpreted to state that Plaintiff's schizoaffective disorder did not create  more than a marginal reduction in the unskilled occupational base.  See SSR 85-15, 1985 WL 56857, *4 ("basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes

-12-

in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base"). At a minimum, the ALJ's finding that Plaintiff experienced significant limitations in interacting with coworkers and responding to workplace changes would reduce the unskilled occupational base.

The administrative findings are additionally problematic. Consistent with Tripp's findings, the ALJ found that Plaintiff experienced moderate deficiencies in concentration, persistence and pace (Tr. 29). Case law from this District and elsewhere have found that moderate concentrational deficiencies suggest substantial limitations which must be acknowledged at Step Five of the administrative sequence. *Edwards v. Barnhart*, 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J .). The failure to account for moderate deficiencies in CPP in the hypothetical question constitutes reversible error. *Id.*; *See also Ealy v. Commissioner,* 594 F.3d 504 (6th Cir.2010). Here, the ALJ not only failed to address such deficiencies in the hypothetical question, but omitted vocational testimony altogether. The presence of moderate deficiencies in concentration, persistence, or pace, without more, requires the use of vocational testimony. *Edwards,* at 931; *Boley v. Astrue,* 2012 WL 680393, *15 (E.D.Mich. February 10, 2012)(Grand, M.J.).

In addition, the administrative findings are difficult to fathom, given that after finding the presence of *moderate* concentrational difficulties (Tr. 29), the ALJ later stated that Plaintiff's "nonexertional limitations [were] *mild* in nature . . ." (Tr. 34)(emphasis added). On this critical point, the Court is unable to ascertain whether the ALJ found the presence of moderate concentrational limitations or mild ones. An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Commissioner, Social Sec. Administration,* 55 Fed.Appx. 333, 339, 2003 WL 236419, *5 (6th Cir. January 30, 2003); *Diaz v. Chater*, 55 F.3d 300, 306 (7th

-13-

Cir.1995).   Aside from the great weight of evidence showing significant nonexertional limitations, the inconsistencies found in the administrative opinion require a remand for clarification.

### D.  The Credibility Determination

Plaintiff also faults the ALJ for citing activities such as watching television, playing video games, household chores, and reading to support the non-disability finding. *Plaintiff's Brief* at 11-13.  Plaintiff contends that these activities do not translate into the ability to perform an unlimited range of work, arguing on a related note that the ALJ overlooked testimony concerning deficiencies in memory, concentration, and stamina. *Id.* at 12.

Consistent with the procedural requirements of SSR 96-7p, the ALJ's credibility determination contains an adequate discussion of the medical transcript and Plaintiff's allegations of limitation.[5]  In rejecting Plaintiff's claims of disability, the ALJ did not err in relying on the consultative and nonexamining findings by Boneff and Tripp (Tr. 32-33). However, the ALJ's reliance on these sources for his finding that Plaintiff did not experience significant nonexertional limitations is misplaced.   As found by these sources, Plaintiff's inability to manage his own benefit funds (Tr. 196); need for work requiring little corroboration or interaction with the public (Tr. 197, 254); and limitations in responding to workplace changes (Tr. 254) document the presence of significant work related limitations requiring the use of vocational testimony.  Finally, while Plaintiff testified to a fairly wide

---

[5]
The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms.  "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2.  The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record." *Id.*

-14-

range of activities, the treating records indicate that his tendency to overstate his abilities was symptomatic of his illness (Tr. 238, 285-286).

In closing, I note that while the transcript indicates significant nonexertional limitations, Plaintiff has not established an "overwhelming" case for disability. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994). Despite the need for vocational testimony and clarification of the ALJ's findings, Plaintiff's treating psychiatrist, as well as the non-treating sources have opined that he is capable of a range of employment. As such, I recommend a remand for further fact-finding rather than an award of benefits. *Id.*

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded to the administrative level for further fact-finding.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to

-15-

E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: November 27, 2013


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on November 27, 2013, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla for Michael Williams
Case Manager to the
Honorable R. Steven Whalen

-16-