UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARQUISE E. HAYES,

    Plaintiff,                         Civil Action No. 12-15231

v.                                      HON. BERNARD A. FRIEDMAN
                                           U.S. District Judge
                                           HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL           U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION RE: ATTORNEY FEES**

This is a Social Security Disability case brought under 42 U.S.C. § 405(g). On November 27, 2013, I filed a Report and Recommendation ("R&R") [Doc. #21], recommending that the Plaintiff's motion for summary be granted, and that the case be remanded. On January 2, this Court entered judgment in favor of the Plaintiff, remanding the case for further administrative proceedings pursuant to Sentence Four of § 405(g)[Doc. #22]. Before the Court at this time is the Plaintiff's motion for attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A) [Doc. #24]. I recommend that Plaintiff's motion for attorney fees [Doc. #24] be GRANTED IN PART, and that Plaintiff be awarded a total of **$5,675.50** under the EAJA.

                          **I.     STANDARD OF REVIEW**

The Equal Access to Justice Act ("EAJA") is one of some 131 fee shifting statutes enacted by Congress. *See Coulter v. State of Tennessee*, 805 F.2d 146, 148 (6th Cir. 1986). Specifically, 28 U.S.C. § 2412(d)(1)(A) provides, in pertinent part:

> "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses...incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States...unless the court finds the position of the United States was substantially justified or that special circumstances make an award unjust."

In the context of a Social Security case brought under 42 U.S.C. § 405(g), a plaintiff who wins a Sentence Four remand directing further administrative proceedings is a "prevailing party" within the meaning of the EAJA. *Shalala v. Schaefer*, 509 U.S. 292, 301-302, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). Thus, the salient question in the present case is whether the position of the United States was "substantially justified." Under the EAJA, the government has the ultimate burden of showing that its position was substantially justified such as to support a denial of attorney fees. *United States v. 0.376 Acres of Land*, 838 F.2d 819, 829 (6th Cir. 1988); *United States v. True*, 250 F.3d 410, 419, fn. 7 (6th Cir. 2001). The resolution of that question is addressed to the district court's discretion. *Pierce v. Underwood*, 487 U.S. 552, 563, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

In *Pierce v. Underwood*, 487 U.S. at 565, the Supreme Court defined the term "substantially justified" as "justified to a degree that could satisfy a reasonable person." In linking the term to a standard of reasonableness, the Court cautioned that "[t]o be 'substantially justified' means, of course, more than merely undeserving of sanctions for

frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve." *Id.*, at 566. On the other hand, a successful plaintiff is not entitled to attorney fees simply because he or she won. The "substantially justified" standard does not "raise a presumption that the Government position was not substantially justified simply because it lost the case." *Howard v. Barnhart,* 376 F.3d 551, 554 (6th Cir.2004) (quoting *Scarborough v. Principi,* 541 U.S. 401, 415, 124 S.Ct. 1856, 158 L.Ed.2d 674(2004)). Rather, the test is whether the Commissioner's position was grounded in a reasonable belief in fact and law, notwithstanding that the denial of benefits was not supported by substantial evidence. *Jankovich v. Bowen*, 868 F.2d 867, 870 (6th Cir. 1989). *See also Noble v. Barnhart,* 230 Fed.Appx. 517, 519 (6th Cir.2007) ("[T]he position of the government will be deemed to be substantially justified if there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action"); *Comm'r, INS v. Jean,* 496 U.S. 154, 161–162, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) ( "While the parties' postures on individual matters may be more or less justified, the EAJA-like other fee-shifting statutes-favors treating a case as an inclusive whole, rather than as atomized line-items.").

## II. DISCUSSION

### A. Entitlement to EAJA Fees

Having won a Sentence Four remand, Mr. Hayes is a "prevailing party" within the meaning of the EAJA. The first question, then, is whether the government's position in this

appeal was substantially justified.

While the Commissioner recognizes that I "found that the ALJ erred in his analysis of the opinions of consultative examiner Boneff and non-examining source Tripp," she suggests that I qualified my opinion by noting that "both doctors...in effect concluded that Plaintiff was capable of a range of unskilled work." *Defendant's Brief in Response* [Doc. #25], at 5. However, this grossly understates my findings. In establishing the Plaintiff's Residual Functional Capacity ("RFC"), which is essential to the disability determination, the ALJ erroneously disregarded the critical findings of the consultative sources, doctors on whom the ALJ said he placed "substantial weight." I found as follows:

> I agree that by any standard, the RFC did not adequately reflect Plaintiff's full degree of psychiatric impairment as found by either Boneff or Tripp. The RFC limits Plaintiff to "unskilled work that is not complicated or detailed" (Tr. 31). In contrast, Boneff found that Plaintiff should be limited to work "with little requirement for corroborative work or decision making" (Tr. 197). Boneff, also noting problems in making simple calculations, concluded that Plaintiff would not be capable of handling his benefit funds (Tr. 195-197). However, neither the inability to handle finances nor problems working with others are reflected in the RFC.
>
> Tripp's findings also reflect greater limitations than those found in the RFC. Tripp found that Plaintiff was moderately limited in the ability to interact with the general public, carry out detailed instructions, and respond appropriately to workplace changes (Tr. 254). Admittedly, Tripp's non-examining conclusions are somewhat undermined by his erroneous reference to Boneff as a "MS," or treating source, in determining that the consultative findings were entitled to "great weight" (Tr. 251). However, his findings are consistent with treating records showing that while Plaintiff's condition stabilized subsequent to the May, 2009 psychotic episode, he continued to experience significant symptomology. Treating notes state repeatedly that Plaintiff overestimated his abilities (Tr. 286); required oversight in managing his medication use (Tr. 352); and experienced neurological symptoms from either

> schizophrenia or medication side effects (Tr. 322). Notably, while Dr. Burgoyne refrained from completing an evaluation of Plaintiff's work related abilities, his recommendation that a Vocational Expert would be required to perform such an assessment suggests that he believed that Plaintiff experienced significant vocational limitations.

R&R [Doc. #21] at 10-11.

In addition, I found that the ALJ's conclusion that Plaintiff's nonexertional limitations would not result in more than a minimal reduction in the unskilled occupational base was "unsupported by either the treating or consultative records:"

> First, both treating source Dr. Burgoyne and consultative examiner Boneff found the presence of significant limitations in psychological functioning (Tr. 191, 196); *see also* fn 3. Treating notes created almost one year after Plaintiff's May, 2009 psychotic break indicate that he experienced paranoid ideation (Tr. 359). Consistent with these findings, non-examining source James Tripp found that Plaintiff experienced moderate deficiencies in concentration, persistence, or pace (Tr. 249) and that his work place abilities would be limited by moderate limitations in interacting appropriately with the public and responding appropriately to workplace changes (Tr. 254).

> While Dr. Burgoyne, Boneff, and Tripp concluded, in effect, that Plaintiff was capable of a range of unskilled work (Tr. 197, 255, 364), none of their findings can be interpreted to state that Plaintiff's schizoaffective disorder did not create more than a marginal reduction in the unskilled occupational base. See SSR 85-15, 1985 WL 56857, *4 ("basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base"). *Id*. at 12-13.

I further found that in his hypothetical question, the ALJ failed to account for the Plaintiff's moderate deficiencies in concentration, persistence, or pace, and that he should

have taken vocational testimony:

> The administrative findings are additionally problematic. Consistent with Tripp's findings, the ALJ found that Plaintiff experienced moderate deficiencies in concentration, persistence and pace (Tr. 29). Case law from this District and elsewhere have found that moderate concentrational deficiencies suggest substantial limitations which must be acknowledged at Step Five of the administrative sequence. *Edwards v. Barnhart*, 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J .). The failure to account for moderate deficiencies in CPP in the hypothetical question constitutes reversible error. *Id.*; *See also Ealy v. Commissioner,* 594 F.3d 504 (6th Cir.2010). Here, the ALJ not only failed to address such deficiencies in the hypothetical question, but omitted vocational testimony altogether. The presence of moderate deficiencies in concentration, persistence, or pace, without more, requires the use of vocational testimony. *Edwards,* at 931; *Boley v. Astrue,* 2012 WL 680393, *15 (E.D.Mich. February 10, 2012)(Grand, M.J.).
>
> In addition, the administrative findings are difficult to fathom, given that after finding the presence of *moderate* concentrational difficulties (Tr. 29), the ALJ later stated that Plaintiff's "nonexertional limitations [were] *mild* in nature . . ." (Tr. 34)(emphasis added). On this critical point, the Court is unable to ascertain whether the ALJ found the presence of moderate concentrational limitations or mild ones. *Id.* at 13.

Finally, I criticized the ALJ's credibility determination because of his misplaced reliance on consultative and non-examining sources in finding that Plaintiff did not experience significant nonexertional limitations:

> As found by these sources, Plaintiff's inability to manage his own benefit funds (Tr. 196); need for work requiring little corroboration or interaction with the public (Tr. 197, 254); and limitations in responding to workplace changes (Tr. 254) document the presence of significant work related limitations requiring the use of vocational testimony. Finally, while Plaintiff testified to a fairly wide range of activities, the treating records indicate that his tendency to overstate his abilities was symptomatic of his illness (Tr. 238, 285-286). *Id*. at 14-15.

In the presence of the ALJ's fundamental and critical errors, it cannot be said that the Commissioner's position in this appeal was substantially justified. Furthermore, the comment in my R&R that the Plaintiff "had not established an overwhelming case for disability," *id.* at 15, is completely beside the point for purposes of an EAJA petition. Citing *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994), I made the comment in the context of whether the case should be remanded for an award of benefits or for further administrative proceedings, not for the entirely separate purpose of determining whether the Commissioner's position was substantially justified. If I had found that the Plaintiff *had* presented an overwhelming case for disability, I would have recommended a remand for an award of benefits.

The Plaintiff is entitled to EAJA fees.

### B.     Amount of Attorney Fees

Attorney's fees claimed under the EAJA must be reasonable. *Glass v. Secretary of HHS*, 822 F.2d 19, 21 (6th Cir. 1987). As the Supreme Court noted in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." In *Glass*, 822 F.2d at 21, the Sixth Circuit, citing *Coulter v. State of Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986), recognized "that the rate-times-hours method of calculation, also known as the 'lodestar' approach, includes most, if not all, of the factors relevant to determining a reasonable attorney's fee."

As to the hourly rate, the statutory hourly maximum under 28 U.S.C. § 2412(d)(2)(A) is $125.00, "unless the court determines that an increase in the cost of living or a special factor,...justifies a higher fee."  Plaintiff's counsel claims an hourly rate of $173.01.  The Commissioner argues that Plaintiff has provided no justification for an hourly rate above $125.00.

In *Bryant v. Commissioner of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009), the Sixth Circuit held that it is the plaintiff's burden to justify a rate above the statutory maximum, and that they must produce evidence beyond the attorney's own affidavit:

> "In requesting an increase in the hourly-fee rate, Plaintiffs bear the burden of producing appropriate evidence to support the requested increase. *See Blum v. Stenson,* 465 U.S. 886, 898, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (considering attorney fees under § 1988, the Court stated, "[t]he burden of proving that such an adjustment is necessary to the determination of a reasonable fee is on the fee applicant"). Plaintiffs must 'produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* at 895 n. 11, 104 S.Ct. 1541."

In *Bryant*, the Court found that Plaintiffs did not meet their burden of justifying a higher hourly rate where they submitted only the Department of Labor's Consumer Price Index ("CPI") in arguing that the rate of inflation supported an increase above the statutory maximum.

Plaintiff's counsel maintains his practice in Syracuse, New York, in the Second Circuit.  However, he and I both are bound by Sixth Circuit precedent, and *Bryant* clearly holds that a plaintiff cannot meet his or her burden of justifying a rate above $125.00 per

hour by relying only on the CPI and an attorney's affidavit. A plaintiff must submit something more showing that the claimed rate is in line with prevailing rates in this community. As much as I might like to give counsel a higher rate, he has not met his burden under *Bryant*.[1]

Plaintiff claims 43.1 hours of attorney time. He also requests 3.6 hours of administrative time, billed at $80 per hour.[2]

The Commissioner argues that the number of hours claimed is excessive because Plaintiff did not prevail on all of the arguments he raised. However, that position runs counter to the *Hensley v. Eckerhart, supra*, 461 U.S. at 435, the very case that the Commissioner cites:

> "[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing the fee. The result is what matters." (citation and footnote omitted).

None the issues on which Plaintiff failed to prevail could be considered frivolous, and I do not find that counsel raised them in bad faith. This was a complex, fact-intensive case, and a claim for 43.1 hours is not out of line with what a reasonably competent attorney would expend.

---

[1] In the future, counsel may want to look at the State Bar of Michigan's 2010 Economics of Law Practice in Michigan Survey, *Michigan Bar Journal*, Vol. 90, no. 2 (February 2011), to obtain a fair estimate of prevailing rates in this district.

[2] The Commissioner does not specifically challenge the administrative hours.

Therefore, Plaintiff is entitled to EAJA fees of $125 per hour, for 43.1 hours ($5,387.50) plus administrative costs of 3.6 hours at $80 per hour ($288.00), for a total of **$5,675.50**

### C.   Who Gets the Fees?

In *Astrue v. Ratliff,* 560 U.S. 586, 130 S.Ct. 2521, 2224, 177 L.Ed.2d 91 (2010), the Supreme Court held that EAJA attorney fees belong to the claimant, not to the claimant's attorney, and that the award of fees "is therefore subject to a Government offset to satisfy a pre-existing debt that the litigant owes the United States."    In *Ratliff*, the claimant in fact owed the Government a debt that predated the district court's approval of the EAJA award. However, the Court noted, albeit in dicta, that "the Government has...continued the direct payment [to attorneys] practice where the plaintiff does not owe a debt to the government and assigns the right to receive the fees to the attorney." *Id*. at 2259.

In *Cowart v. Commissioner of Soc. Sec.*, 795 Fed.Supp.2d 667, 671 (E.D. Mich. 2011), as in the present case, the Plaintiff assigned EAJA fees to her attorney. Citing a number of post-*Ratliff* cases from other districts, the Court held:

> "In this case, there is a written assignment of any EAJA fees from Ms. Cowart to her attorney. As long she owes no pre-existing debt to the Government, there is nothing in *Ratliff* that would prevent this Court from honoring her assignment. Indeed, to do so would at least partially address Justice Sotomayor's concern, expressed in her concurring opinion in *Ratliff*, that the decision "will make it more difficult for the neediest litigants to find attorneys to represent them in cases against the Government." *Id*. at 2532 (concurring opinion of Sotomayor, J.)."  795 Fed.Supp.2d at 671.

As was the case in *Cowart*, the Commissioner has not indicated whether in fact Ms.

Phillips owes money to the Government. I will therefore follow the common practice and recommend that the Commissioner be given the opportunity to determine whether there is a pre-existing debt that would offset the EAJA fees. *See Cowart* at 671-672; *Cutler v. Astrue* 2011 WL 901186, *1 (N.D.Ohio) (N.D.Ohio,2011) (fees payable directly to attorney "after the defendant has completed its customary investigation into any outstanding federal debts owed by the plaintiff"); *Taylor v. Astrue*, 2011 WL 1261138, *2 (N.D.Ill. 2011) ("After the award is entered, if the Government determines that plaintiff owes no such debts, the Government will direct that the fee award and expenses be made payable to plaintiff's attorney pursuant to the EAJA assignment signed by the parties"); *Bates, supra,* at *3 ("Courts...have been consistent in applying *Ratliff* for the proposition that any award—regardless to whom it is paid—is first subject to offset for any preexisting federal debt"). If there is no preexisting debt, then the EAJA fees should be paid directly to the Plaintiff's attorney.

### III.   CONCLUSION

For these reasons, I recommend that Plaintiff's motion for attorney fees [Doc. #24] be GRANTED IN PART, and that Plaintiff be awarded a total of **$5,675.50** under the EAJA.

I further recommend that no later than 14 days from the date of a final order, the Commissioner determine whether the Plaintiff owes the Government a pre-existing debt. If no such debt is owed, then payment of the EAJA fees should be made directly to Plaintiff's attorney. If the Plaintiff does owe a pre-existing debt, the EAJA fees should be offset by the

amount of the debt, with any remainder to be paid to Plaintiff's attorney.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Dated: August 25, 2014

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 25, 2014, electronically and/or by U.S. mail.

            s/Carolyn M. Ciesla
            Case Manager to the
            Honorable R. Steven Whalen